**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|   |   |   |
|---|---|---|
| EDNA LUZ CAMANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:09CV199 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Edna Luz Camano, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Social Security Disability ("DIB"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 10) be DENIED; that Defendant's motion for summary judgment (docket no. 13) be GRANTED; and that the final decision of the Commissioner be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

AFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on March 27, 2006, claiming disability due to "difficulties with physical daily body functions," with an alleged onset date of June 2, 2005. (R. at 115, 119.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 66-70; 72-73.) On April 14, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 27-63.) On April 23, 2008, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act because based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 16-26.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial

evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 18.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of osteoarthritis of her knees, diabetes mellitus with peripheral neuropathy, morbid obesity, asthma, sleep apnea, mild scoliosis of the thoracic spine, early arthropathy of the lumbar spine with sciatica, right wrist tenderness as a residual of carpal tunnel syndrome and related surgery, and hypertension, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 18-20.) The ALJ next determined that Plaintiff had the RFC to perform light work, except that she could only stand and walk up to four hours in an eight-hour workday; bend, stoop, and squat occasionally but not frequently; reach, handle, feel, grasp, and finger occasionally with the right hand and frequently with her left hand; and that she must avoid exposure to dust, fumes, noxious odors, or other respiratory irritants. (R. at 20-24.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a food sales clerk/baker for a grocery store, or as a housekeeper because of the levels of exertion required in each position. (R. at 22-23.) At step five, after considering Plaintiff's age, education, work experience, and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 23-24.) Specifically, the ALJ found that Plaintiff could work as an information clerk, at the semi-skilled or unskilled sedentary levels, or

6

as a travel clerk. (R. at 25.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 26.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that the ALJ improperly discounted the opinions of Plaintiff's treating physician. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 1-2.) ) In support of her claim, Plaintiff has attached to her motion a letter from her treating physician, dated April 21, 2009, and a physical capacity document, signed by her treating physician, dated February 5, 2009. (Pl.'s Mem.) These documents were not presented to the ALJ or the Appeals Council during the administrative review process. Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standards such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 8-15.)

### A. The ALJ properly evaluated Plaintiff's treating physician's opinion in accordance with controlling agency regulations.

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence.

See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Here, the ALJ properly evaluated Plaintiff's treating physician's opinion. The ALJ found that Dr. Jones' assessment did not warrant controlling weight because his conclusions were not objectively corroborated by the findings of treating orthopedists (Drs. Zaslav and Struble), x-rays, MRI scans, the records of Dr. Wolfgang (who monitored Plaintiff's diabetes), or claimant's admitted daily activities. (R. at 24.) The ALJ noted that while Dr. Jones is Plaintiff's primary physician, he only provided generally routine medical care, such as the prescription of medications. (R. at 24.) The ALJ instead gave greater weight to the opinion of Dr. Newell, because his assessment was consistent with his own objective findings, as well as the objective findings of other treating sources. (R. at 24.)

Dr. Jones opined on April 24, 2007, that Plaintiff's experience of pain and other

8

symptoms were severe enough to interfere with her attention and concentration constantly; Plaintiff had a severe limitation on the ability to deal with work stress; Plaintiff could continuously sit for only twenty minutes at a time and stand for only fifteen minutes at a time; Plaintiff could sit and stand/walk less than two hours in an eight-hour workday; Plaintiff needs a job which would permit her to shift positions at will from sitting, standing, or walking; Plaintiff would need to take twenty unscheduled breaks, each of approximately ten minutes in length, during an eight-hour workday; Plaintiff would need to elevate her legs above her heart for twenty percent of an eight-hour workday; Plaintiff could occasionally lift less than ten pounds, but never any more than that; Plaintiff could bend and twist five percent of an eight-hour workday; and Plaintiff was likely to be absent from work more than three times a month as a result of her impairment or treatments. (R. at 352-55.) At the same time, Dr. Jones also opined that emotional factors or psychological conditions did not affect the severity of Plaintiff's symptoms and functional limitations, and that Plaintiff had no significant limitations in doing repetitive reaching, handling, or fingering. (R. at 352-53.)

There is no evidence in the record to support Dr. Jones's extreme assessment of Plaintiff's RFC. First, Dr. Jones is a family physician, who provided generally routine medical care to Plaintiff. Plaintiff's medical records indicate that Dr. Jones primarily provided medication prescriptions. (R. at 232-260, 357-63, 377-79.) The records also reveal that Plaintiff was counseled several times as to the need for weight loss, her tobacco use, and the need to be compliant with her medications, but the records do not contain any significant findings regarding Plaintiff's functional limitations. (R. at 232-260, 357-63, 377-79.) Furthermore, Plaintiff's records do not indicate that she would necessarily be absent from work more than three times a

9

month for her impairments or treatment. In fact, the record indicates that Plaintiff received treatment (Cold Harbor Family Medicine) only sporadically, less than once a month on the average. (R. at 232-260, 357-63, 377-79.) She also received treatment from Dr. Wolfgang, who monitored her diabetes, only about once a month on the average. (R. at 298-325, 384-422). Plaintiff's records regarding her stress incontinence (Virginia Urology), conclude as of December 29, 2005, when Plaintiff's doctor indicated her condition was being controlled. (R. at 186-224.) While Plaintiff's records from Dr. Zaslav, one of her treating orthopedists, indicate that she underwent physical therapy for her osteoarthritis for one month in 2006, and received a referral for a spine specialist, there is no evidence indicating that she ever went to a spine specialist. (R. at 261-72.) Plaintiff's records from Dr. Struble, her other treating orthopedist, indicate that she received three Synvisc injections in her knees for her osteoarthritis in August 2007; she was given a card for a bariatric surgeon (of which there is no evidence of a subsequent follow-up); and Dr. Struble indicated after the last injection that he would see Plaintiff on an "as-needed" basis. (R. at 380-83.) But, there are no records of subsequent visits. Finally, records from Dr. Tabassian indicate Plaintiff underwent successful laser surgery on her right eye in November 2007, and that her next follow up visit was scheduled for six months later. (R. at 326-51.) While Plaintiff's records indicate she sought treatment from multiple physicians, those treatments did not support Dr. Jones's extreme assessment that Plaintiff would miss work more than three times a month due to her impairments or treatment regimen.

Furthermore, the ALJ properly found that Dr. Jones's assessment of Plaintiff's functional limitations is not corroborated by the other evidence of record, including medical reports and Plaintiff's own statements. Dr. Jones opined that Plaintiff's chronic back and knee pain limited

10

her mobility. (R. at 352-55.) However, Plaintiff had an unremarkable lumbar spine exam in 2006, and did not follow up with the spine specialist to whom she had been referred. (R. at 261-72.) In July of 2006, Plaintiff's x-rays revealed minimal degenerative changes in her right knee. (R. at 225.) In October of 2006, Plaintiff underwent physical therapy for her knees. (R. at 261-69.) In November of 2006, Dr. Zaslav reported that Plaintiff's knee had improved, but he authorized a J-brace for Plaintiff's patellofemoral pain. (R. at 270-72.) Thereafter, the relevant records reflect that in August of 2007, Dr. Struble noted that Plaintiff did not have any patellofemoral pain; she had no significant gait or cadence abnormality; she had a negative straight leg test; but that he nevertheless prescribed three Synvisc injections for both of her knees, and that there was no evidence of complications from the injections. (R. at 380-83.) He also advised Plaintiff that she was not a good candidate for knee replacement surgery because of her diabetes, obesity and neuropathy; she should lose weight and get her diabetes under control; and he gave her a referral to a bariatric surgeon, but, again, there is no evidence that Plaintiff followed up on the referral. (R. at 380-83.) A February 20, 2008 x-ray indicated evidence of only mild scoliosis of the thoracic spine. (R. at 372.) Accordingly, Dr. Jones's assessment of Plaintiff's RFC is not corroborated by the above medical evidence.

Finally, the ALJ properly found that Plaintiff's own statements do not corroborate Dr. Jones's assessment of her functional limitations. Plaintiff stated in an April 23, 2006 function report that she prepared meals daily; did light chores once or twice a week; could go out alone; drove; went grocery shopping for approximately an hour twice a month; attended family gatherings on weekends; could lift up to fifteen pounds; but that she could only walk for three minutes and stand for fifteen minutes, and pay attention five to ten minutes; though she did not

acknowledge concentration or memory loss as a problem. (R. at 134-41.) On a daily activities questionnaire dated April 5, 2007, Plaintiff further noted that she cooked dinner and washed dishes every day; washed clothes once a week; went grocery shopping every other week; visited family members at least once a month and that they visited her every weekend and sometimes during the week; her only absences from work previously were for doctors' appointments or surgery; and that she had no problem dealing with changes at work. (R. at 168-76.) She testified before the ALJ that she stopped working because the store where she was employed had closed; the reason she could not get a job was because no one would hire her; she stopped receiving unemployment insurance in February of 2006; she only took over-the-counter medications for her knee and back pain; she did not use an assistive device; she smoked; she experienced dizziness, but did not know what caused it; she drove; she dusted, did laundry, and washed dishes; and she went grocery shopping with her husband. (R. at 27, 33, 35-36, 38-40, 44-45, 47-48, 50-51.) Such daily activities entail a greater level of exertion than Dr. Jones's suggested assessment of Plaintiff's RFC; and, as the ALJ noted, because Plaintiff's statements were inconsistent with her RFC assessment by the ALJ, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R. at 21.)

Instead, the ALJ gave greater weight to Dr. Newell's assessment of Plaintiff's RFC for a reduced range of light work. (R. at 24, 227-30.) As support for this finding, the ALJ noted that Dr. Newell's assessment was consistent with both his own objective findings and with the objective findings of other treating sources. (R. at 24.) Also, Dr. Newell's assessment was consistent with the generally conservative nature of Plaintiff's medical care and Plaintiff's admitted activities of daily living. (R. at 24.) Accordingly, the ALJ's decision not to grant

controlling weight to Dr. Jones's assessment of Plaintiff's RFC is supported by substantial evidence and application of the correct legal standards. Furthermore, the ALJ's subsequent determination that Plaintiff had the RFC to perform light work, with the previously mentioned limitations, is supported by substantial evidence and application of the correct legal standards.

Properly relying on Dr. Newell's assessment of Plaintiff's RFC, the ALJ further found that Plaintiff was unable to perform any past relevant work, but also found that Plaintiff had acquired skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. (R. at 24-25.) In making this determination, the ALJ utilized the testimony of a VE. (R. at 25-26, 55-62.) The ALJ asked the VE if any occupations existed that could be performed by an individual with the same age, education, past relevant work experience, and RFC as Plaintiff. (R. at 25, 57-61.) The VE responded that such a person could perform semi-skilled sedentary jobs, such as an information clerk or travel clerk, and unskilled, sedentary jobs, such as an information clerk. (R. at 25, 57-61.) Further, if the individual could use their upper extremities frequently, such an ability would accommodate more jobs in both the sedentary, unskilled, and the sedentary, semi-skilled categories. (R. at 25, 60-61.) The VE was also asked if her testimony would have been different if she was asked to assume that same hypothetical individual needed to avoid concentrated exposure to dust, fumes, noxious odors, or other pulmonary irritants, to which she responded such a limitation would not have affected her answer. (R. at 25-26, 62.)

Because the hypothetical question posed to the VE by the ALJ fairly set forth all of Plaintiff's limitations that were reasonably established by the record, the ALJ was entitled to rely upon it in making his decision that there were jobs existing in significant numbers in the national

13

economy that Plaintiff could perform.  It is irrelevant that Plaintiff could not find another job after her place of employment closed, as it does not matter whether work exists in the immediate area in which a claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for a job.  See 20 C.F.R. §404.1566.  Such factors do not entitle a claimant to the receipt of DIB.  Id.  Therefore, the ALJ's conclusion that Plaintiff was not disabled, as defined under the Act, is supported by substantial evidence and application of the correct legal standards.

> **B.      The Court cannot consider the new evidence offered by Plaintiff and a sentence six remand to consider the new evidence is inappropriate.**

In determining whether the ALJ's decision was supported by substantial evidence, a district court cannot consider evidence which was not presented to the ALJ.  Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996) (citing U.S. v. Carlo Bianchi & Co., 373 U.S. 709, 714-15 (1963); Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972) (citing Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1970) (noting that reviewing courts are restricted to the administrative record in determining whether the decision is supported by substantial evidence).

Although the Court cannot consider evidence which was not presented to the ALJ, the Act provides that the Court may remand a case for reconsideration in two situations.  42 U.S.C. § 405(g).  The first is a "sentence four" remand, which provides that the "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the cause for a rehearing."  Id.  The second is a "sentence six" remand, which provides that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is

good cause for the failure to incorporate such evidence into the record in a prior proceeding." Id.; see also Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985) (a reviewing court may remand a case on the basis of newly discovered evidence if four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application was first filed and not be merely cumulative; (2) the evidence must be material; (3) there must be good cause for failure to submit the evidence before the Commissioner; and (4) the claimant must present to the remanding court a general showing of the nature of the new evidence.). Because Plaintiff has offered new evidence to the Court, the Court will address whether Plaintiff has fulfilled the requirements to justify a sentence six remand.

Plaintiff fails to meet the first requirement that the evidence offered must be new and not merely cumulative. 777 F.2d at 955. The April 21, 2009 letter from Dr. Jones, Plaintiff's treating physician, essentially reiterates his opinion from April 24, 2007: Plaintiff has chronic pain; she cannot walk more than a short distance without pain; she cannot stand or sit for more than twenty minutes without pain; and she cannot lift more than ten pounds without pain. (R. at 352–55; Pl.'s Mem.) The February 5, 2009 medical document also restates Dr. Jones's opinion of April 24, 2007. (R. at 352-55; Pl.'s Mem.) Neither of those documents are "new" under the Borders standard because they are cumulative of what was already in the record. 777 F.2d at 955.

Furthermore, the letter and medical document offered by Plaintiff do not meet the requirements that the evidence be relevant and material in order to justify a sentence six remand. New evidence must relate to the determination of disability *at the time the application was first filed*, and it must not concern evidence of a later-acquired disability, or of the "subsequent

deterioration of the previously non-disabling condition." Szubak v. Sec'y of Health & Human Services, 745 F.2d 831, 833 (3rd Cir. 1984) (citing Ward v. Schweiker, 686 F.2d 762, 765 (9th Cir. 1982); see also Borders, 777 F.2d at 955. Evidence must also be material to the extent that the Commissioner's decision "'might reasonably have been different'" had the new evidence been considered. Borders, 777 F.2d at 955-56 (quoting King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). The letter from Plaintiff's treating physician was prepared on April 21, 2009, which is almost a year after the ALJ made his determination. The medical document was prepared on February 5, 2009. As stated above, this evidence is merely a reiteration of Plaintiff's treating physician's opinion, which was considered by the ALJ before making his findings. It is difficult to believe that the Commissioner's decision might reasonably have been different had this evidence, which is not new, been considered by him. If Plaintiff believes her condition has deteriorated since the ALJ's decision, her proper remedy is to file a new application and submit the additional evidence with such application. Because this evidence is not new, relevant, or material, it fails to meet the requirements of a sentence six remand.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 11) and motion to remand (docket no. 12) be DENIED; that Defendant's motion for summary judgment (docket no. 14) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Richard L. Williams and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                           /s/
                                        DENNIS W. DOHNAL
                                        UNITED STATES MAGISTRATE JUDGE

Date: February 2, 2010
Richmond, Virginia